IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIZABETH BASHAM**, | CIVIL ACTION NO.  20-4 |
| Plaintiff, | JUDGE JOY FLOWERS CONTI |
| v. | |
| **CITY OF NEW CASTLE, PATRICK MCGUIRE and ANTHONY CIOFFI,** | |
| Defendants. | |

I. Introduction

Pending before the court is a renewed motion for summary judgment (ECF No. 42) in this property demolition case filed by defendants the City of New Castle ("City" or "New Castle"), Patrick McGuire ("McGuire"), the Code Enforcement Supervisor for the City, and Anthony Cioffi ("Cioffi") who was, at the relevant time, the Code Enforcement Foreman for the City.[1] Plaintiff Elizabeth Basham ("Basham") filed a response in opposition to the motion (ECF No. 48) and defendants filed a reply (ECF No. 49). The parties thoroughly developed the Concise Statement of Material Facts ("CSMF"). The motion is ripe for disposition.

II. Standard of Review

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[1] The court denied the original summary judgment motion without prejudice due to the parties' failure to comply with Local Rule 56 (ECF Nos. 39, 40).

1

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001); *see Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

When the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has made this showing,

the burden then shifts to the nonmoving party, who cannot simply rest on the allegations in the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. Summary judgment is proper in cases where the nonmoving party's evidence in opposition is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249-50.

   III. Factual and Procedural Background

As required at the summary judgment stage, the facts and all reasonable inferences therefrom are construed in the light most favorable to Basham, the nonmoving party. Unless otherwise stated, the facts are gleaned from the joint CSMF (ECF No. 54).

On May 22, 2018, Basham bought a property located at 918 S. Jefferson Street, New Castle, PA (the "property") from the Tax Claim Bureau of Lawrence County for $2,500. She intended to repair the property and "flip it" as an investment.

On December 12, 2018, McGuire performed an Act 121 inspection, which identified 58 code violations. During that inspection, Basham spoke to McGuire by cell phone and advised him that she was going to fix up the property and flip it. McGuire asked how long the work would take and Basham told him 6 to 9 months. Nevertheless, McGuire referred the property to Cioffi to be considered for demolition. Cioffi had sole authority to determine whether a property would be placed on the New Castle demolition list. (Cioffi Deposition at 9, 12).

The same day, December 12, 2018, Cioffi also inspected the property and took photos. On January 2, 2019, Cioffi issued a "Repair or Demolition Notice," which is referred to on the City's Standard Demolition Check List ("Check List") as "Form 12." (ECF No. 47-5 at 1). This notice was sent to Basham by certified mail and posted at the property. Basham received the "Repair or Demolition Notice" and personally took it off the door of the property. Among other

things, Basham was directed to make repairs and improvements to make the structure safe and sanitary.  A list of violations was included in the Repair or Demolition Notice which corresponded with the violations set forth in the Act 121 inspection.  Basham was notified that if the repairs were not made, the City would cause the structure to be razed and the costs would become a lien on the real estate; the city could also pursue a claim against her for those costs.  A reinspection was to be performed on May 15, 2019.  The notice advised:  "you may not rely on any representation by any city official regarding this matter unless the representation is in writing."  (ECF No. 47-5 at 6-9).  The notice stated that Basham had a right to appeal within 10 days.  Basham did not appeal.

Defendants contend that Basham admitted she received actual notice of demolition (ECF No. 43 at 15).  Defendant's argument is based on some confusing testimony by Basham in her deposition about an "orange paper" that said the property would be torn down.  (Basham Deposition at 62-67).  At most, defendants raise fact disputes about how to interpret Basham's testimony which, at this stage of the case, must be construed in Basham's favor.  There is a photo in Cioffi's file dated December 10, 2018, which shows an orange document posted on the door of the property (ECF No. 47-5 at 26).  The date of the photo is prior to the notice of repair or demolition, which is dated January 2, 2019.  Basham changed the door prior to Cioffi's reinspection in May 2019 (Basham Deposition at 63, 69-70). Whether the orange document constituted notice of actual demolition or a condemnation notice appears to be a disputed issue of fact.  For purposes of summary judgment, the court will assume that the orange document did not constitute notice of the actual demolition of the property.

4

Between December 2018 and May 2019, Basham made approximately $20,000 of improvements to the property, including new windows and doors, repairs to the roof, repointing the chimney, a new hot water heater, new floors and drywall. (Basham Deposition 44-52).

Defendants contend in their brief that a second "Repair or Demolish" notice (Form 12) was sent to Basham on May 15, 2019 (ECF No. 43 at 2, 15). There is no evidence of this second notice in the evidentiary record. The Check List and Cioffi's file reflect only the first Repair or Demolish notice sent on January 2, 2019 (ECF No. 47-5 at 1, 6-9).

On May 17, 2019, (unbeknownst to Basham) Cioffi performed another inspection. He did not go into the structure. He recalled that the locks had been changed, but did not notice that the front door was new. Cioffi looked through a window but did not observe any changes and talked to a neighbor, who said no work had been done. (Cioffi Deposition at 29).

**NO notice was sent to Basham after Cioffi's May 17, 2019 reinspection**. An "intended demolition" notice (also referred to as a "bring down" notice or Form 13) should have been sent, but it is not in the file. (Cioffi Deposition at 31-32, 32-33). Cioffi testified: "I didn't send her any other notices. There's nothing in the file." Cioffi Deposition at 32-33. The "bring down" notice would have triggered a second 10-day appeal period. (Cioffi Deposition at 23).

Bring down notices are typically sent by certified mail and posted at the property and photos of the posting are taken. (Cioffi Deposition at 33). The Check List is NOT checked off as "completed" for "Request Bring Down"; "Notice of Intended Demolition (Form 13) to *<u>all owners</u>*" (emphasis in original); or "Post Notice of Intended Demolition letter (Form 13) - take photo of posting." (ECF No. 47-5 at 1). There is no evidence in the record that any of these steps were taken.

The code enforcement department would typically do a short title search, and if anyone acquired an equitable interest (such as a bank), that person or persons too would be sent a 10-day intended demolition notice. (Cioffi Deposition at 17). There was no equitable interest in the property at 918 S. Jefferson. It appears a title search was requested by Cioffi on June 21, 2019 (ECF No. 47-5 at 14-15). The results of the title search are not in the file. (Cioffi Deposition at 33).

On May 20, 2019, Basham texted McGuire seeking an inspection and approval to finalize her repairs. McGuire texted back: "Call me." The contents of the subsequent phone call are disputed. (Compare Basham Deposition at 73 with McGuire Deposition at 25-26). Viewed in Basham's favor, McGuire confirmed that she could finish her renovations and, when she felt the property was ready, pay $50 to remove the property from the demolition list. On May 30, 2019, Basham contacted the electrical inspector to check the electrical work.

There is no evidence in the record about the specific steps taken to demolish the property at 918 S. Jefferson – or any explanation for how demolition could have occurred with the incomplete Check List and no "bring down" notice. Defendants' CSMF simply states: "The razing was scheduled and handled by a third party." Joint CSMF ¶ 26. Cioffi testified about the standard procedures. When funding became available, Cioffi would identify the properties in the worst condition to be demolished. The list would be approved by City council and sent to the City clerk to be put up for bid. The clerk would request the City engineer to draw up a bid packet. Contractors would bid on the job, and the bid would be approved by City council. (Cioffi Deposition at 21).

On July 30, 2019, Siegel Excavation demolished the property. Basham learned about it from her son, who saw a video on Snapchat. The Check List reflects that on August 29, 2019, a municipal lien was completed and sent to the City solicitor (ECF No. 47-5 at 1).

Basham asserted three claims in the complaint: (1) violation of the 5th Amendment Takings clause; (2) violation of 14th Amendment Due Process clause; and (3) negligent misrepresentation by McGuire. Count 3 was dismissed by stipulation (ECF No. 33). Defendants seek summary judgment on all claims. After reviewing the court's opinion and order denying the initial summary judgment motion without prejudice (ECF Nos. 39, 40), Plaintiff has voluntarily withdrawn the "takings" claims at Count 1 (ECF No. 48 at 14). The only remaining claims, therefore, involve alleged Due Process violations by each of the named defendants.

IV. Legal Analysis

A.   General principles of law

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). In order to successfully establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See Studli v. Children & Youth Families Central Reg'l Office*, 346 F. App'x 804, 813 (3d Cir. 2009); *Mulholland v. Gov't of Cty. of Berks*, No. 10–cv-5616, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012), aff'd, 706 F.3d 227 (3d Cir. 2013).

As recently explained in *Madar v. City of Philadelphia*, No. CV 19-6033, 2021 WL 2156362 (E.D. Pa. May 27, 2021):

> In the context of property deprivations, the United States Supreme Court "has never employed an actual notice standard in its jurisprudence. Rather, its focus has always been on the procedures in place to effect notice." *United States v. One Toshiba Color Television*, 213 F.3d 147, 155 (3d Cir. 2000). Thus, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). It mandates only that notice be "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Flowers*, 547 U.S. at 220 (holding that notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent.").

*Id.* at *8. Due process requires: (1) the government provide notice to the property owner reasonably calculated to apprise interested parties of the pendency of the action; and (2) afford them an opportunity to present their objections. *Gordon v. City of Phila.*, No. 07-5039, 2009 WL 2710247 (E.D. Pa. 2009) (citing *Flowers*, 547 U.S. at 220).

B.  Due Process violation

The record in this case – viewed in the light most favorable to Basham -- reflects a clear due process violation. No "bring down" notice was sent to Basham. A "bring down" notice was required by the Check List and Cioffi agreed that a "bring down" notice should have been sent. (*See* Cioffi Deposition at 33, ECF No 47-5 at 1). Defendants did not provide notice reasonably calculated to apprise Basham of the City's decision to demolish the property and Basham had no opportunity to present an objection to that action. *See Gordon*, 2009 WL at 2710247 *4) (city's decision to give property heightened designation and demolish it without notice or opportunity for property owner to be heard was "in direct contravention" of Due Process clause).

The "Repair or Demolish" notice sent in January 2019 was not reasonably calculated to provide notice of the actual demolition. The January 2019 notice had a 10-day appeal period, but

8

provided five months (until May 2019) for Basham to make repairs.  Basham had no reason to appeal the "Repair or Demolish" notice because she intended to make repairs and flip the house.

Cioffi testified that the "Repair or Demolition Notice" was not the final step; instead it provided a period of time during which the property owner could make repairs to avoid demolition. (Cioffi Deposition at 14).  In fact, prompting repairs was the City's goal because it wanted to keep the property on the tax rolls. (Cioffi Deposition at 14).  The Repair or Demolish notice contained a reinspection date, which Cioffi tracked by computer. (Cioffi Deposition at 14-15).  If the repairs were not made, the next step was to send out a "bring down" notice, do a title search and send a 10-day intended demolition notice to anybody with an equitable interest in the property. (Cioffi Deposition at 17).  To the extent that defendants argue that no "bring down" notice was required for the 918 S. Jefferson property because nobody held an equitable interest in the property, that argument is foreclosed by the plain text of the Check List:  item J required sending "Notice of Intended Demolition (Form 13) to ***all owners*** (including all persons having a legal or equitable interest in the property) by certified or registered mail, return receipt requested" (emphasis in original);  item L required posting the Notice of Intended Demolition and taking a photo of the posting.  Any notices that were returned unclaimed were also to be posted. (ECF No. 45-5 at 1).  The "bring down" notice would have triggered a new 10-day appeal period. (Cioffi Deposition at 19).  In sum, the initial Repair or Demolition notice simply started the process.  The Check List contained substantial additional procedures to provide proper notice of actual demolition.  Those additional procedures were not followed in this case.

The record viewed in favor of Basham reflects that her Due Process rights were violated. She was deprived of her property without receiving notice reasonably calculated to apprise her of the City's decision to demolish the property and without being afforded an opportunity to object

to the demolition. The only substantial question concerning the Due Process claim is: which defendants are liable? The court examines the record with respect to each defendant.

      C.      City of New Castle

The best discussion of municipal liability for improper demolition of a structure located in the court's independent research occurs in *Bush v. City of Scranton*, No. 3:CV-11-0670, 2013 WL 5465334 (M.D. Pa. Sept. 30, 2013). The court explained that to establish a § 1983 claim against a city, a plaintiff must show "that either a policy or lack of policy of Defendant City led to the unlawful demolition of their [property]." *Id.* at *8 (citing *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978)). A city cannot be held liable for the conduct of its employees via respondeat superior. *Id.* Here, as in *Bush*, Basham challenges the actions of city employees in a single incident involving lack of notice of the decision to demolish a structure.

There is no evidence that the policy itself was inadequate or was the moving force behind the violation in this case. Cioffi testified that the City's policy was expressed in the Check List and that he typically followed the Check List. (Chioffi Deposition at 14, 24). The Check List clearly and explicitly required a "bring down" notice to be sent to ***all owners***. (ECF No. 47-5, emphasis in original). Basham argues that the instructions on the Check List regarding notice and posting are too "terse," but any alleged flaws in the instructions did not cause the violation because Chioffi was well aware that a "bring down" notice should have been sent. (Chioffi Deposition at 31-33). Basham also argues that Chioffi did not perform a thorough reinspection, but that argument focuses on implementation, not the adequacy of the underlying policy itself. It appears the policy would have provided proper notice if it had been followed; Basham presented no evidence to the contrary.

There is no evidence of an unwritten policy or practice of ignoring the Check List or its notice requirements. Basham's situation apparently was an isolated failure to comply with the policy. There is no evidence that the City had a policy or practice of not sending "bring down" notices or that the City was deliberately indifferent to a property owner's right to notice; to the contrary, the undisputed testimony is that the "bring down" notice should have been in the file, but was never sent for unknown reasons. (Cioffi Deposition at 31-32). *See Bush*, 2013 WL 5465334, at *10 (no municipal liability where record reflected that City Inspector's custom and practice was to use the procedure outlined by BOCA Codes when the City was going to demolish a structure after it was condemned); *Madar*, 2021 WL 2156362, at *10 ("Absent evidence that such guidelines were routinely ignored, any isolated violation of them did not occur pursuant to a policy or custom or policy under which *Monell* liability can be imposed on the City.").

In sum, the City's procedures, as reflected in the Check List, were reasonable and there is no evidence of other instances in which the city employees failed to follow those procedures. The record in this case, even viewed in the light most favorable to Basham, would not be sufficient for a reasonable jury to find in favor of Basham with respect to her Due Process claims against the City.

Basham argues in the alternative that the City should be held liable because Cioffi was the final policymaker. (ECF No. 48 at 11-13). The case law does not support her argument. A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983; a pertinent decision by an official with decision-making authority on the subject constitutes official policy. *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020). Basham failed to produce any evidence that Cioffi possessed authority over the City's policy. Cioffi was the foreman in the code enforcement department. (Cioffi Deposition at

11

9). Cioffi reported to the mayor, who was in charge of the department. (Cioffi Deposition at 7). Chioffi was required to follow the standard demolition check list; he had no authority to make changes to that process; and in his 15 years in that position, he never made any changes to the process. (Cioffi Deposition at 9,10). In sum, the undisputed facts of record reflect that while Cioffi had substantial discretion to implement the policy, he had no authority to make or revise the policy. *See Bush*, 2013 WL 5465334, at * 9 (no municipal liability where code enforcement officials had no authority to make policy).

No reasonable jury could render a verdict in favor of Basham with respect to her Due Process claims against the City. The summary judgment motion on the Due Process claims against the City will be granted.

D.   McGuire

It is well settled that personal involvement of a defendant in the alleged constitutional deprivation is a requirement in a § 1983 case. Each named defendant must be shown to have been personally involved in the events or occurrences upon which a plaintiff's claims are based. *Bush*, 2013 WL 5465334, at *3; *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1998) ("personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

Plaintiff did not specifically address McGuire's liability in her brief and, in any event, failed to produce sufficient evidence of McGuire's participation in the alleged constitutional violation (i.e., the demolition without notice) for a reasonable jury to rule in her favor on the claims against McGuire. As reflected in the record, McGuire had very limited involvement, which consisted of performing an Act 121 inspection in December 2018, telling Cioffi to look at

the property, and talking to Basham about her repairs in May 2019.  There is no evidence adduced that McGuire played any role in listing Basham's property for demolition or arranging the actual destruction.  There is also no evidence adduced that McGuire played any role in failing to send out a "bring down" notice.

The record establishes that Cioffi had the sole responsibility to place properties on the demolition list.  The same day McGuire performed the Act 121 inspection, Cioffi did his own inspection.  The "repair or demolish" notice was issued by Cioffi.  Cioffi did not meet with McGuire to discuss properties on demolition list and testified:  "It was more my duties."  (Cioffi Deposition at 23).  Cioffi was not aware of the discussion between McGuire and Basham in May 2019, and confirmed that he (Cioffi) was the person Basham should have contacted.  (Cioffi Deposition at 28) ("she should have been calling me instead of him.").  There is no evidence that McGuire was involved in the matter in any direct way after his Act 121 inspection in December 2018.  McGuire Deposition at 25-26 (Cioffi handled demolitions).  Cioffi testified: "If I started the file, I would finish the file."  (Cioffi Deposition at 15).

Viewing the record in the light most favorable to Basham, the court must conclude that no reasonable jury could render a verdict in her favor with respect to her Due Process claims against McGuire.  The summary judgment motion on the Due Process claims against McGuire will be granted.

E.     Cioffi

As set forth above, the record establishes that Cioffi had substantial personal involvement in the alleged constitutional violation.  Cioffi had sole responsibility to place a property on the demolition list.  The "repair or demolish" notice was issued by Cioffi.  Cioffi performed the reinspection on May 17, 2019.  It was Cioffi's responsibility to comply with the Check List

(including the duty to send a "bring down" notice to Basham). Indeed, the defense agrees that Cioffi alone was involved. (ECF No. 43 at 19) ("Any decisions regarding the razing of the subject property fell on Mr. Cioffi alone.").

The record viewed in the light most favorable to Basham is sufficient for a reasonable jury to render a verdict in her favor with respect to her Due Process claims against Cioffi. The summary judgment motion on the Due Process claim against Cioffi will be denied.

### F. Punitive Damages

The defense contends that punitive damages are not recoverable against Cioffi in his individual capacity because Cioffi "just followed orders" and had no authority to change the process for placing properties on the demolition list. Basham did not address punitive damages in her brief.

Punitive damages are not available under § 1983 against a municipality, but may be assessed against an official sued in his individual capacity. *Falco v. Zimmer*, No. CV 13-1648, 2020 WL 7694047, at *14 (D.N.J. Dec. 28, 2020). To recover punitive damages, a plaintiff must prove that the state actor's "conduct is shown to be motivated by evil motive or intent, or [ ] involves reckless or callous indifference to the federally protected rights of others." *Gentles v. Portock*, No. CV 19-0581, 2020 WL 3412545, at *7 (E.D. Pa. June 22, 2020) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)); *see also Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

The record, viewed in the light most favorable to Basham, may support a claim for punitive damages. Depending on the evidence presented at trial, a reasonable jury could conclude that Cioffi acted recklessly or with callous indifference to Basham's rights by performing an inadequate reinspection and proceeding with the demolition even though his own

file reflected that no "bring down" notice was ever sent.  Defendants' motion to strike the potential recovery of punitive damages will be denied without prejudice to reassert after the evidence has been presented at trial.

V. Conclusion

In accordance with the foregoing, the renewed summary judgment motion (ECF No. 42) will be granted in part and denied in part.  The Due Process claims against Cioffi will proceed to trial.  Summary judgment will be granted in favor of the City and McGuire on the Due Process claims and in favor of defendants on the remaining claims.  A scheduling conference is scheduled on December 21, 2021 at 3:00 p.m., by telephone.   The parties shall meet and confer and advise the court whether they are willing to engage in further mediation efforts.  An appropriate order will be entered.

Dated:  November 30, 2021                                    BY THE COURT,

/s/ Joy Flowers Conti
Senior United States District Judge